**SO ORDERED.**

**DONE and SIGNED November 29, 2017.**



_____
**JEFFREY P. NORMAN**
**UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| In Re: | * | Case #17-30245 |
| Samuel Taylor Free | * | Chapter 7 |
| Debtor | * | |

_____

| Lisa G. Winborne | * | AP #17-3009 |
| Plaintiff | * | |
| | * | |
| Versus | * | |
| | * | |
| Samuel Taylor Free | * | |
| Defendant | * | |

_____

### <u>MEMORANDUM OPINION</u>

The Court held a trial in the above captioned adversary proceeding on November 7, 2017.

This opinion constitutes this Court's findings of fact and conclusions of law. A separate judgment

will be entered. To the extent any of the findings of fact are considered conclusions of law, they

1

are adopted as such. To the extent any of the conclusions of law are considered findings of fact, they are adopted as such.

## STATEMENT OF JURISDICTION

This adversary proceeding seeks a determination that the judgment owed to the plaintiff by the defendant is a non-dischargeable debt. The court has jurisdiction pursuant to 28 U.S.C. §1334. This is a core proceeding under 28 U.S.C. 157(b)(2)(I).

## FINDINGS OF FACT

The plaintiff, Leasa G. Winborne (hereinafter "Mrs. Winborne" or the plaintiff), is the widow of James C. Winborne (hereinafter "Mr. Winborne"). Mr. Winborne died on October 30, 2014. At the time of his death, the deceased and debtor/defendant Samuel Taylor Free (hereinafter "Mr. Free" or debtor/defendant) were sole members of two companies, Turkey Creek Holding Company, LLC (hereinafter "TCHC") and Turkey Creek Appraisal Services, LLC (hereinafter "TCAS"). These companies were formed in 2004 and 2005. TCHC was formed to buy and sell real estate, and TCAS was a business formed to perform appraisals. Both companies were owned 50% by Mr. Winborne and 50% by Mr. Free. The plaintiff was sole legatee of Mr. Winborne. On January 13, 2015, she was placed into possession of her husband's 50% interest in both companies, pursuant to a Judgment of Possession[1] rendered in the succession of James C. Winborne.

On August 20, 2015, the plaintiff filed suit in the Fifth Judicial District, Franklin Parish, seeking damages from Mr. Free for his wrongful activity in converting the co-owned business assets and revenues that he failed to share with her. On October 31, 2016, a trial was held and the

---

[1] Under Louisiana law, a Judgment of Possession provides third parties with a court order transferring assets to the heirs or legatees of a decedent. The Judgment of Possession grants the heirs or legatees title and possession of the decedent's assets.

2

Court ruled in favor of the plaintiff and awarded damages of $42,071, plus all court costs, including $1,500.00 in expert fees, and legal interest from the date of judicial demand.

Thereafter, the defendant/debtor filed a Chapter 13 bankruptcy on February 16, 2017. His Chapter 13 plan was confirmed on April 28, 2017. However, 22 days prior to plan confirmation, the plaintiff instituted this adversary proceeding seeking a determination that the judgment held by the plaintiff was non-dischargeable. The plaintiff's complaint was originally based on both 11 U.S.C. §§ 523(a)(2) and (a)(6). On June 21, 2017, this Court partially granted the defendant's Motion to Dismiss (ECF No. 17) for failure to state a claim for relief under 11 U.S.C. § 523(a)(2). Therefore, the only remaining claim for trial was the claim under 11 U.S.C. § 523(a)(6).

At the time of Mr. Winborne's death, both TCHC and TCAS were operating under agreements signed on December 17, 2004, and July 19, 2005, respectively. Plaintiff's Ex. 1 and 3. While not identical agreements, the major provisions of the operating agreements are identical. Each agreement provides the following:

1. James C. Winborne and Sam T. Free are the initial members of both LLCs.
2. Their sharing ratios are 50% each.
3. Their initial capital contributions are $1,000 for each LLC.
4. The terms for dissociation of a member, in this case the death of James C. Winborne.

As to a member's death, the operating agreements provide that the member's successor, in this case the plaintiff, shall be an assignee of the member's membership interest. Assignees have limited rights under the operating agreements. They have no management rights, only economic rights; however, the agreements are vague. While it is clear that the assignee has no management rights (Plaintiff's Ex. 1 and 3, ¶ 11.1), there is an issue of interpretation as to a member's or assignee's voting rights. This is because the operating agreements require "the affirmative vote,

consent, approval, election or other action of a Majority in Interest of the Members" to take any action.  Plaintiff's Ex. 1 and 3, ¶3.2).

11.1 of the two operating agreements provides the following:

> The Member from whom the assignee acquired its interest shall continue to have all voting rights of a Member until the assignee is admitted as a Member.

In this case, "the Member" is Mr. Winborne, who is deceased.  The assignee is his wife, Mrs. Winborne, who became the assignee by the Judgment of Possession entered in Mr. Winborne's succession.  Mrs. Winborne was never admitted as a member to either LLC; therefore, if one reads the operating agreement literally, then the deceased Mr. Winborne retained voting rights even in his death.  Obviously, he could not exercise these voting rights.

This legal issue of voting rights becomes important when the Court reviews the "Events of Dissolution" in Article 12 of the operating agreements, which are identical in both operating agreements.  The operating agreements provide the following:

> 12.1 Events of Dissolution
> The Company shall be dissolved upon the occurrence of any one of the following events:
> (a) expiration of the Company's term;
> (b) entry of an order for relief with respect to the Company under Chapter 7 of the Bankruptcy Code;
> (c) entry of a judgement of dissolution of the Company pursuant to LA Rev Stat Ann 12:1335: ***and***,
> (d) consent to dissolve the Company by a Majority in Interest of the Members [emphasis supplied].

Mr. Free testified as to the dates that he believed TCHC and TCAS were dissolved.  As to TCHC, he testified that this occurred on July 19, 2015 (Defendant's Ex. 6), and as to TCAS he testified that this occurred in January of 2016.  He also testified that dissolution occurred because he was the only member of either LLC after Mr. Winborne's death and he that he could unilaterally consent to the dissolution of either LLC under paragraph (d) of 12.1 of the operating agreements.

4

However, Mr. Free never accounts for Mr. Winborne's voting rights, or his assignee Mrs. Winborne. His voting of his sharing ratio at 50% is not a Majority in Interest of the Members of either LLC. Either Mr. Winborne did not vote because of his death, or Mrs. Winborne did not vote because she had no voting rights. Either way, Mr. Free was not able to secure a Majority in Interest of the Members to authorize dissolution. His 50% sharing ratio as voted is not a Majority in Interest of the Members and he accordingly had no authority to unilaterally dissolve either LLC.

Therefore, dissolution of both TCHC and TCAS did not occur on the dates testified to by Mr. Free because he did not obtain consent by a Majority in Interest of the Members. As previously stated, the operating agreements are problematic as to voting rights. Either the deceased Mr. Winborne or Mrs. Winborne had voting rights. In addition, irrespective of who had the voting rights, neither voted nor consented to dissolution of the LLCs. Mr. Winborne was deceased and the lack of consent by Mrs. Winborne is, in part, the reason for her state court litigation with Mr. Free as she claimed he converted LLC assets to his personal benefit. The state court implicitly agreed with this claim. Second, and more importantly, the operating agreements specifically provide that there must also be entry of a judgement of dissolution of the company pursuant to LA Rev Stat Ann 12:1335, which did not occur. Therefore, irrespective of whether Mr. Free had consent of a Majority in Interest of the Members, there could be no dissolution of either LLC. This is because there was no entry of a judgement of dissolution of either of the companies pursuant to LA Rev Stat Ann 12:1335. This was an express requirement of dissolution of both LLCs as required by the operating agreements.

Therefore, after Mr. Winborne's death, both TCHC and TCAS continued in existence and it appears they have never been legally dissolved. However, regardless of Mr. Winborne's death, Mr. Free continued to do business as TCAS. Bank statements (Plaintiff's Ex. 14) continue to show

deposits into the TCAS bank account for appraisal services and Mr. Free additionally took checks payable to TCAS and either cashed the checks or deposited these funds into accounts not associated with TCAS. He then spent these funds personally and did not pay over any sums to Ms. Winborne. This occurred in spite of the TCAS operating agreement that expressly provided "[c]ompany funds shall be deposited in an account or accounts in the name of the Company and shall not be commingled with the funds of any Member or other person. All checks, orders or withdrawals shall be signed by any one or more persons authorized by a Majority in Interest of the Members." Mr. Free therefore intentionally breached the operating agreements both by commingling TCAS funds with his personal funds and by not paying over Ms. Winborne's 50% sharing ratio in TCAS.

Additionally, both operating agreements provide in paragraph 3.4 that "[a]ny action that involves the investment or expenditure of an amount greater than $300.00 must first be approved by Members holding in the aggregate at least 60.00% of the total Sharing Ratios." Mr. Free held a 50% sharing ratio, which is less than the 60% required by this paragraph, and after Mr. Winborne's death he routinely signed checks in excess of $300 without the consent of any other party. Plaintiff Ex. 14. Therefore, he expressly violated this provision of the operating agreements.

Mr. Free testified that he took the TCAS funds to "pay bills and employees." However, he offered no documentary proof of the payment of such bills and employees. The Court does not find Mr. Free's testimony credible. Taken as a whole, his testimony was impeached by his deposition. His testimony was often contradictory, and he was often evasive and not credible. The Court finds him an unreliable witness.

The Court feels compelled to comment on the testimony of the two witness as trial. The plaintiff and defendant's testimony was often contradictory. Two trial exhibits are illustrative.

6

Plaintiff exhibits 12 and 13 are computer printouts that the plaintiff indicates she obtained from computers used in TCAS by both her deceased husband and Mr. Free. They are spreadsheets of inspection work performed by TCAS and an accounting of the payments made by its clients for those inspection services. The Court accepts these documents as accurate. They are detailed, logical, and cover the period before and after Mr. Winborne's death. The Court accepts Mrs. Winborne's testimony of how she obtained the documents from a computer used by Mr. Winborne and Mr. Free in the operation of TCAS. However, Mr. Free testified that he had never seen these spreadsheets, did not prepare or use them, and had no idea of how they were obtained. He also intimated that the spreadsheets had been forged by Mrs. Winborne's son, who Mr. Free claims often came into the TCAS office to play games on the company computers.

While Mrs. Winborne's testimony was logical and credible, Mr. Free's testimony was not. First, Mr. Free's testimony was illogical. Mr. Free never explained how the son or any other person could have forged such a detailed document. Second, Mr. Free never explained how TCAS's books and records were actually kept other than to testify that he had turned certain business records over to the Chapter 13 Trustee and that he no longer had access to them. Additionally, Mr. Free's other testimony was often vague and evasive. Mrs. Winborne's testimony was primarily consistent and free from major impeachment. Given the choice of determining the veracity of two competing witnesses, the Court must choose Ms. Winborne's testimony over Mr. Free's. This was a case with two competing interpretations of the facts and the Court is forced to accept one and reject the other.

Mr. Free repeatedly testified that the earnings from his appraisal work after the death of Mr. Winborne belonged solely to him in spite of the fact that the work was performed in the name of TCAS and that both LLCs were never dissolved. These funds, which he diverted to his personal

7

use, did not belong solely to him as he testified, but instead were governed by the operating agreement of TCAS and TCHC. He therefore converted these funds, as well as other LLC assets to his personal and exclusive use.

Mr. Free testified that, after Mr. Winborne's death, he paid Mrs. Winborne 50% of the appraisal fees Mr. Winborne had generated prior to his death. Mr. Free in turn retained the other 50%, which was appropriate under the operating agreement of TCAS, as both he and Mr. Winborne had a 50% sharing ratio in the LLC. Yet, after Mr. Winborne died, he intentionally violated the terms of the operating agreement, feeling he could retain 100% of the proceeds of his appraisals in TCAS, irrespective of the operating agreements providing for a 50/50 sharing ratio. His retention of the funds also violated the plaintiff's ownership interest in TCAS by the Judgment of Possession entered in Mr. Winborne's succession. Therefore, for reasons known only to Mr. Free, he assumed he could take 50% of the profits of TCAS by adhering to the operating agreements and 100% of the profits of TCAS at other times ignoring the operating agreement. Therefore, he adhered to the terms of the operating agreement of the LLC which required a 50/50 split when it personally benefited him, but ignored it when it did not. He did this even as the operating agreement terms expressly contradicted his interpretation of how to split the LCC's profits. This Court holds that Mr. Free's retention of 100% TCAS profits after Mr. Winborne's death was intentional, willful, and malicious. Additionally, he had no factual or legal basis for his position of retaining 100% of TCAS profits after Mr. Winborne's death.

After her husband died, Mrs. Winborne sued in Fifth Judicial District Court, Franklin Parrish for Mr. Free's violation of the operating agreements. A trial was held, and on November 2, 2016, that court entered Reasons for Judgment (Plaintiff Ex. 18). The court followed this with a judgment in favor of Ms. Winborne for $42,071. Plaintiff Ex. 17.

The Court finds the Reasons for Judgment issued by the state court silent as to the issue of dischargeability. Therefore, it must determine from the evidence presented if 11 U.S.C. § 523(a)(6) is applicable to the judgment issued by the state court. This Court must determine whether the judgment is dischargeable. In doing so, it looks to the entire record to determine any wrongful character of any act, even if the pleadings and findings of the state court are not necessarily conclusive.

## LEGAL ANALYSIS

The United States Supreme Court has held that a debtor who had "deprived another of his property forever by deliberately disposing of it without semblance of authority" had intentionally injured the property of another person, and therefore the debt fell within the discharge exception. *McIntyre v. Kavanaugh*, 242 U.S. 138 (1916). However, the Supreme Court later stressed that not every tort judgment for conversion is exempt from discharge. *Davis v. Aetna Acceptance Co.*, 293 U.S. 328 (1934). Negligent or reckless acts do not constitute "willful and malicious" as required by the Code. *Id.* at 332.

11 U.S.C. § 523(a)(6) states that a debt is non-dischargeable where there was "willful and malicious injury by the debtor to another entity by the debtor to another entity or to the property of another entity." The Court finds that the defendant did intentionally convert the plaintiff's property interest in profits and assets in the TCAS and TCHC LLCs to his own benefit, and that this is sufficient grounds to find the plaintiff's claims non-dischargeable under 11 U.S.C. § 523(a)(6). The Fifth Circuit's test for dischargeability actions under 523(a)(6) is set forth in *In re Miller*, 156 F.3d 598, 606 (5th Cir. 1998). That court stated that "[t]he test for willful and malicious injury under § 523(a)(6)…is condensed into a single inquiry of whether there exists either an objective substantial certainty of harm or a subjective motive to cause harm' on the part of the debtor." *Id.*

9

The Supreme Court has held that the standard of proof for a dischargeability complaint under 11 U.S.C. § 523(a) is a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279 (1991). Here, the plaintiff has proved by a preponderance of the evidence that (1) there was a substantial certainty that harm would result from the debtor's actions (i.e., that a reasonable person would be substantially certain that harm would result from the actions of the debtor/defendant), and (2) the debtor intended to cause harm. Therefore, the Court holds the judgment debt non-dischargeable.

The Court finds that a reasonable person would be substantially certain the diversion of the funds and assets of TCHC and TCAS in violation of the operating agreements by the debtor/defendant would harm the plaintiff. Additionally, the Court finds the debtor intended to cause the harm inflicted. This Court finds the injury inflicted on the plaintiff was intentional. Mr. Free either intended the harm or was certain or almost certain that harm would result from his actions. This constitutes willful and malicious conduct under 11 U.S.C. § 523(a)(6). The Court expressly finds that the debtor/defendant's conduct was not merely negligent or unintentional.

## CONCLUSION

**THEREFORE, IT IS ORDERED** that the relief requested by the plaintiff in her complaint is granted.

**IT IS FURTHER ORDERED** that the judgment in the amount of $42,071 entered on December 6, 2016, in the Fifth Judicial District Court, Franklin Parrish styled *Winborne vs. Free* is non-dischargeable pursuant to 11 U.S.C. § 523(a)(6). The Court will enter a separate judgment.

**IT IS FURTHER ORDERED** that the hearing currently scheduled for oral rendition of judgment on December 21, 2017, is canceled.

### 

10